This next case is Case No. 4-17-0420, Jacqueline Bulger v. Kevin Springman, for appellant is Attorney Jerome Urbick. Is that how you pronounce your last name? It is, Your Honor. All right, thank you. And for the appellee is Attorney John Schmidt. Ms. Urbick, you may proceed. Thank you, Your Honor. May it please the Court, my name is Jerry Urbick and I represent the plaintiff petitioner in this matter, Ms. Jacqueline Bulger. Now, Ms. Bulger has a statutory right under 735 ILCS 5-2-2301 to timely payment of her settlement within 30 days of tendering her releases or failing that, judgment upon said settlement for the interest thereof. Now, I want to make two points to the Court today. The first is that under the plain meaning of the statute 2301, the defendant is covered. And the second point I want to make to the Court is that the statute is ambiguous. The canons of statutory interpretation and Illinois' overall scheme for compensating persons injured by state employees both favor the interpretation the plaintiff favors here today that the statute does apply to this case and specifically to the defendant, Lori Springman, who is the special representative of a deceased state employee, Kevin Springman, who was involved in an auto accident with Ms. Bulger. Now, returning to the first point, 2301 sets down the rule that settling defendants in personal injury actions must pay their settlements within 30 days or else be subject to judgment thereof. Now, from that general rule, Section G of Section 2301 lays out several exceptions. There's seven of them, I think, but the three which are potentially germane to this case are an exception for the state of Illinois, an exception for state employees indemnified by the state of Illinois pursuant to the State Employee Indemnification Act, and then finally for parties who agree otherwise. Now, taking each of those in turn, I suspect I'm going to be belaboring this point today, and you're probably going to hear it a lot, but Lori Springman is not the state of Illinois. The state of Illinois is not here today. They're not a defendant in this case. It is true that they are an insurer of Lori Springman, and while it's very nice for Mrs. Springman that the state is generous enough to insure her husband's estate, that does not abrogate Ms. Bulger's rights against that estate. Turning to the second exception in the statute, it's pretty clear that the State Employee Indemnification Act does not cover this. The State Employee Indemnification Act sets forth a general scheme for how persons who work for the state who have claims filed against them arising out of their actions as state officers are to be paid. However, the statute specifically accepts any case arising from an automobile accident. Your arguments require first that Lori Springman is a settling defendant. Correct, Your Honor. She didn't sign the release. She didn't execute a release in this case, though. That's correct, but her representative did. Who was her representative? Her representative was the acting manager of the central management department of the state of Illinois. How is it determined that he was her representative from a legal standpoint? Because if you look at the signature line, it says, on behalf of the defendant. I could have signed on behalf of the defendant. That wouldn't make Lori Springman the settling How is it in this record that the acting director at CMS was acting on behalf of the defendant? Where is that legal determination made? That determination is not legally made in the record, but in that instance, Your Honor, I think it's kind of the dog who didn't bark. If the state was just acting on its own, by this point I would think Ms. Springman would have said something If they were making agreements on her behalf, as the signature line and the preamble to the agreement both indicate the agreement was on her behalf, then she is not challenged here today. Although Your Honor is correct, her signature is not anywhere in the record on this document. It is clear from the document itself that it at least purports to be an agreement on her behalf. Plaintiff filed a motion for judgment against the defendant, correct? Correct. The defendant in this case is Lori Springman, special representative of the estate of Kevin Springman, deceased. Is that right? That is correct, Your Honor. Clearly, Lori Springman did not execute a release or sign any sort of settlement agreement in this case. Is that right? She did not physically sign a settlement agreement, but at least as it's been represented to us and in the record in the agreement itself, she was represented by the state employee who signed the agreement. We've established that there wasn't any legal proceeding making CMS or the acting director of CMS a representative of the defendant in the estate, correct? Correct. Okay. The settlement agreement itself, in paragraph 2, states it is expressly agreed that neither the special representative in her individual capacity nor the estate of Kevin Springman shall be responsible for payment of any sum under this agreement. Is that right? That's correct, Your Honor. All right. And yet you maintain that Lori Springman is a settling defendant in this case. We do, Your Honor. Okay. The reason for that being that, if nothing else, the state is certainly acting as her apparent agent in this case. The state signed an agreement, or rather the state employee signed an agreement on behalf of the defendant. The agreement recited that she was the person who was party to the agreement. So at the very minimum, we have an apparent agency here. The state employee held themselves out as Lori Springman's representative. And so in that instance, Lori Springman would be the ultimate principal and so the settling defendant. That would be potentially an argument to be made if you were seeking to find... Actually, I'm not sure that you could make that argument. There's nothing in the record that establishes that Lori Springman gave any direction to CMS in this case to do what it did, and that is execute the settlement release. Well, Your Honor is certainly correct that there is nothing in the record indicating that she did direct or authorize CMS to execute that settlement agreement. However, she has at this point acquiesced in that agreement. It's been almost two years at this point and she's not made any challenge to the state's action on her behalf. But does that make her a settling defendant? I would argue that it does, Your Honor. Once again, as far as representations both to the plaintiff and to the court that appear in the record, CMS was acting on behalf of the defendant and as such she is a settling defendant. Now, moving on from that and turning to my second point... Well, why wouldn't it constitute an agreement with the parties then? She clearly hasn't complained and you didn't complain about having CMS sign off and pay the settlement. No, we didn't complain and we're not complaining about that now, Your Honor. Neither party complained to the terms of the agreement. Correct, and we are now simply asking for... Well, at this point the principal has been paid so that part of it is moved, but there is still about $45,000 of interest that would be outstanding if the court were to fine for petitioners today. And our complaint is not that CMS entered into the agreement. The complaint is that the settlement was not paid in accordance with the statute. Now, turning more specifically to Your Honor's question of agreement among the parties, nowhere in the agreement does the plaintiff waive her rights under Section 2301. This court and Illinois courts in general in cases such as Gallagher v. Leonard, Hardover-Kelly State Department of Central Management v. State Labor Relations Board has always been very reluctant to find a waiver of a statutory right where the agreement makes no reference to that right. And so I would argue that the petitioner did not agree otherwise, and so that third exception in Section G doesn't apply either. And since, alternatively, once you agreed to be paid by the state, then you fell within the provisions of the section. The exception? No, Your Honor, because, again, the state of Illinois is not a defendant in this case, and 2301 addresses settling defendants. The state isn't a settling defendant for the simple reason that it was never a defendant, so it can't be a settling defendant. Wait a minute. Why does one necessarily result in the other? Whether they were a defendant at the outset of the case doesn't necessarily determine whether they can become a settling defendant, does it? Well, I think it does, Your Honor. I mean, the adjective modifies the noun, but the noun still has to be there. You have to be a defendant before you can be a settling defendant. You might characterize the state as a settling party or a settling indemnitor, but that's not what the statute says. The statute says settling defendant. And one of the exceptions is an agreement of the party. Correct, but we did not agree to waive our rights under 2301. We agreed that the state would pay us, but we did not agree thereby to waive our rights under 2301. Now, turning to my second point, where even if the statute is ambiguous, it's nonetheless consistent to read the statute in the manner that the petitioner advances, precisely because reading the state of Illinois to encompass all cases in which the state is an indemnitor or a judgment debtor would render G1, G2, G3, G4, G5, specifically G3 in this case, mere surplusage because there's no reason for the state to exempt employees when it's already going to be covered by the exemption for the state. Likewise, reading section G3, there's no reason to add that comma pursuant to the State Employee Indemnification Act when they could have just ended up with a period, any employee indemnified by the state, unless they intended for some employees not to be covered by the exemption to section 2301. And that's exactly the case we have here today. With the State Employee Indemnification Act, the legislature has enacted a comprehensive scheme for how people wronged by state employees are going to be compensated. It then took the extra step of exempting from that scheme car cases, and this is a car case. So the only rational reason the statute was 2301, 5350-2, that's the Indemnification Act, and 2405-105, the Self-Insurance Act, all work together in this way is to create the result which we have here today, which is that car crash cases are different. In the legislature's judgment, car crash cases are not exempted from 2301. And so based upon that reading, we would ask the Court to apply the law as it is written today and find for the petitioner. Thank you. Thank you, Mr. Herbeck. We'll have time in rebuttal. Mr. Schmidt. Thank you, Your Honor, and may it please the Court and Counsel, my name is John Schmidt. I'm an Assistant Attorney General, and I represent the appellee in this case, the defendant appellee, Lori Springman, as the Special Representative at her husband's estate, and we ask for affirmance of the Circuit Court on the basis primarily that the exceptions in Section 2301 for the State of Illinois and State agencies would apply here. The Circuit Court correctly concluded that those exceptions applied because Ms. Bolger entered into the settlement agreement with the State, and it provided that the payment would come solely from the CMS out-of-liability fund. And it also specifically stated that Lori and her husband's estate would not be obligated to pay. And I think it's important, this is consistent with Section 405-10511 of the Simple Administrative Code, which I'll call the auto or the vehicle liability provision, indemnification provision. That's where CMS would have derived authority to settle the case. And it provides that CMS shall attempt to settle and may attempt to settle public liability claims regarding vehicles. It sets some conditions, though. One is that the CMS has to require an unqualified release of any right of action against the State employee. And the provision goes on to state, basically if there's no settlement, the State has to defend, indemnify, and hold harmless the employee against any tort claim. So what this provision clearly envisions is as long as the vehicle accident is in the course of the State employee's employment, that employee is not going to pay. Now, under their interpretation of the statute, you have a situation where the employee can be forced to pay if the State is more than 30 days late. They're saying in that situation the obligation somehow shifts back to the employee. That seems to do violence to this Civil Administrative Code provision. And we think if you construe the provisions together, the legislature could not have possibly intended that. This Civil Administrative Code provision is a strong declaration that as long as the accident was within the scope of employment, the employee doesn't pay. Mr. Smith? Yeah. Was Laurie Springman, as representative of the State, a settling defendant? I don't think so. I think really the settlement was with CMS. So CMS was a settling indemnitor, I suppose you could say. But again, the settlement agreement really didn't give her any obligations. It even specifically said neither she nor her husband's estate would have to pay. And I know there is, as counsel pointed out, there is in Section 2301 a specific exemption for situations arising under the State Employee Indemnification Act. We think there's a good reason for that. And this may take a little while to explain, but under the State Employee Indemnification Act, the State does not have an obligation to indemnify if the conduct is willful and wanton. Under the auto liability provision I just mentioned, even if it's willful and wanton, the State would still have an obligation to indemnify as long as it arises in the course of employment. And that potentially makes a difference for this reason. If the legislature did not put the specific State Employee Identification Act exemption there, there could be an argument made in the case of a settling, in the case of a settlement, that the State should not have been involved in the first place. This was willful and wanton conduct, so the State shouldn't have been involved. This State of Illinois exception in 2301 should not apply. So having the specific State Employee Indemnification Act exception takes that argument away. It forecloses that argument. And under that provision, any time if the State chooses to indemnify, then the exception applies. But again, the same concern is not present under the auto liability provision, because willful and wanton conduct isn't indemnified anyway. So the legislature may have felt it was not necessary to spell that out, to spell out an exception for auto liability, that that would clearly be encompassed under the State of Illinois and State agency exceptions, even if the conduct was willful and wanton. Again, we think, we agree that the plain language of the statute does dictate a result here, but we think the result's the opposite one. That the exceptions to 2301 for the State of Illinois and its agencies would clearly apply here when the settlement agreement is really between Ms. Bulger and the State, or one of the State's agencies, CMS. We have also, as an alternative argument, asserted sovereign immunity in our brief, that if the statute, even if the statute were held potentially applicable, sovereign immunity would apply because the judgment would be one that would be founded upon a contract with the State of Illinois. So under Section 8B of the Court of Claims Act, sovereign immunity would bar that judgment in our view. But we don't think you need to get to that, because the statute, we believe the statute in the first place, doesn't apply here because of the State of Illinois and agency exceptions. And as your honors have mentioned, because Ms. Springman would not really be a settling defendant. And again, it would create an absurd situation if the legislature, in the auto liability indemnification provision, carefully set forth that any settlement agreement would have to release the individual employee. And if the case goes to trial, carefully set forth that the State would have to indemnify at least up to $2 million. But then if there was a settlement and the State did not pay within 30 days, then somehow even though the individual defendant doesn't control the settlement agreement, then they're on the hook. Really, we think that's an absurd result. And the statutory scheme should not be interpreted that way. It's a basic rule of statutory construction. The statute should be interpreted so they would be harmonious if that's possible. And we think that's easily done here. And we would ask for affirmance of the circuit court's decision. Thank you. Thank you, your honor. Rebuttal argument. Thank you, your honor. May it please the court, just a couple points on rebuttal. The first being that the explanation that counsel just proffered for why the legislature failed to carve out an additional exception for auto liability cases is not persuasive for the exact reason that the legislature didn't need to carve out an exception for auto liability cases. In fact, it didn't need to carve out any exceptions at all. It could have just said if the State's indemnifying, then the statute doesn't apply. But that's not what the legislature did. The legislature laid down the general rule and then carved out a specific exception for employees indemnified pursuant to the State Employee Indemnification Act. So counsel's argument kind of reverses the chain of events there. Now the second larger point is that counsel is correct that adopting petitioners' interpretation of the statute would result in this anomalous case where the state employee might end up having an obligation to pay. But the thing is that is entirely in keeping with what to me has been the theme of this case, and that is the many, many ways we could have avoided being here today If the legislature had simply specified that the State's indemnities were universally exempted from the statute, we wouldn't be here today. If the Office of Central Management had simply included themselves as a part of the resettlement agreement, we wouldn't be here today. If the State of Illinois had used language like judgment debtor as it does elsewhere in the Civil Practice Act, in Section 1303, we wouldn't be here today. But of all the thousand ways we wouldn't be here today, none of those occur. Now that we have the law we have, we have the facts we have, and the petitioner would ask that the court apply it to reverse the decision of the circuit court. Thank you. Okay. Thank you, counsel. Thank you both. The case will be taken under advisement, and a written decision shall issue. Court stands in recess.